# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | | |
|---|---|---|
| **BOBBY HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 11-2098 |
| | ) | |
| **DR. PAUL TALBOT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## **OPINION**

Plaintiff, proceeding *pro se*, was housed at Danville Correctional Center at all times relevant to this cause of action. Now before this Court is Defendant Talbot's Motion for Summary Judgment [d/e 43] on Plaintiff's claim for deliberate indifference to Plaintiff's serious medical needs.

Summary judgment will be granted. Plaintiff has not come forth with evidence sufficient to create a genuine issue of material fact as to whether Defendant Talbot was aware of a substantial risk of serious harm to Plaintiff and consciously disregarded that risk during the times Plaintiff sought medical services for his eye condition and for new contact lenses.

At the outset, the Court notes that Plaintiff's compliance with the federal and local procedural rules when responding to Defendant Talbot's Motions for Summary Judgment was lackluster at best. The Court specifically notes that included in the documents attached to Plaintiff's Sur-Reply to Defendant Talbot's Reply in support of his Motion for Summary Judgment was what appears to be an alternate and extended version of the Response Plaintiff originally filed on November 13, 2012. Plaintiff neither explains the inclusion of his alternate Response (for lack of a better term) with his Sur-Reply, nor does he explain why the Response

attached to his Sur-Reply is different from that originally filed. Indeed, Plaintiff makes no reference to that alternate Response in his Sur-Reply whatsoever.[1] Accordingly, the Court will only consider the Response Plaintiff originally filed on November 13, 2012, and will not consider the alternate Response attached to his Sur-Reply. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Greer v. Bd. of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2009) (providing that "a lawsuit is not a game of hunt the peanut"). Further, the Court had to expend a considerable amount of time sorting through which facts were disputed or undisputed, material or immaterial in Plaintiff's Response given its less than straightforward organization. Nevertheless, in the interest of avoiding further delay in this matter, the Court will not order Plaintiff to re-file his Response and Sur-Reply that more fully comply with the federal and local procedure rules.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(1)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and

---

[1] Included in that alternate Response was an additional affidavit. As with the alternate Response itself, Plaintiff makes no reference to that additional affidavit. Because the Court will not consider the alternate Response, it will also not consider the additional affidavit apparently attached in support of the alternate Response.

thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

## FACTS

Plaintiff arrived at Danville Correctional Center from Western Illinois Correctional Center in February 2009. (Dft's MSJ UMF #3). On June 12, 2009, Plaintiff was referred to the Gailey Eye Clinic where he saw an ophthalmologist who was going to order contact lenses with a different prescription and call when they arrived because Plaintiff's existing contacts were not fitting well. (Dft's MSJ UMF #4). The outside ophthalmologist's recommendation for new contacts was approved by the Danville Correctional Center's Medical Director. (Dft's MSJ UMF #5). On September 25, 2009, Danville Correctional Center's in-house optometrist, Matthew Jones, O.D., offered Plaintiff a three-month supply of contact lens cleaning solution. (Dft's MSJ UMF #6). Defendant Talbot is employed by Wexford Health Sources, Inc., and has served as Danville Correctional Center's Medical Director since October 26, 2009. (Dft's MSJ UMF #2). On November 23, 2009, Defendant Talbot first had contact with Plaintiff by reviewing Plaintiff's medical chart, and Defendant Talbot noted that Plaintiff had a history of having glaucoma with a questionable lens problem that required soft contact lenses. (Dft's MSJ UMF #7). On December 2, 2009, a nurse noted to Plaintiff upon him checking in that contact lens solution had been ordered and that a pass would be sent to him when the medication came into the facility. (Dft's MSJ UMF #8). On March 8, 2010, Plaintiff reported to a nurse that his

prescription for Opti-Free rewetting drops ran out and that he needed more. (Dft's MSJ UMF #9). A prescription was issued for Xalatan for the glaucoma and Opti-Free rewetting drops that day. (Dft's MSJ, Medical Record p. 208). On March 9, 2010, Defendant Talbot signed the non-preferred request form that was submitted on Plaintiff's behalf for the latter to receive Opti-Free Express, a cleansing solution. (Dft's MSJ UMF #10). In March 2010, Defendant Talbot requested that the in-house optometry department evaluate Plaintiff as soon as possible for an eyeglass prescription after he reviewed Plaintiff's chart which indicated that the Regional Medical Director, Arthur D. Funk, M.D., had denied Plaintiff's request for new contact lenses. (Dft's MSJ, Talbot Aff. ¶ 7; Medical Record p. 110).

When Defendant Talbot first personally saw Plaintiff on May 6, 2010, for Plaintiff's glaucoma condition, Plaintiff's Xalatan order was still good through September 6, 2010, and Defendant Talbot determined that Plaintiff needed an optometry examination for eyeglasses as well as a funduscopy and visual field review. (Dft's MSJ UMF #12). When Defendant Talbot next saw Plaintiff on August 9, 2010, he prescribed more Xalatan drops and asked that Plaintiff follow up with optometry regarding his glaucoma. (Dft's MSJ UMF #13). Prior to that date, on April 11, 2010, the in-house optometrist, Dr. Edward L. Montwill, O.D., ordered multi-purpose lens solution. (Dft's MSJ, Medical Record p. 208). When Defendant Talbot next examined Plaintiff on August 19, 2010, he noted that Plaintiff had myopic degeneration of the right eye with a questionable high myopia and may require contact lenses, and that there was an unknown cause and effect, if any, between the use of contact lenses and open angle glaucoma. (Dft's MSJ UMF #14).

Defendant Talbot then recommended an ophthalmological evaluation on August 19, 2010, in order to determine whether Plaintiff's disease was progressing and to find out whether

he would benefit or be at risk with the use of contact lenses. (Dft's MSJ, Medical Record pp. 71-74). Defendant Talbot requested a collegial review to consider an ophthalmological outside evaluation of the glaucoma and to conduct a risk/benefit evaluation of contact lenses vis-à-vis eyeglasses. (Dft's MSJ, Medical Record pp. 71-74). A collegial review was performed that same day, and the request for Plaintiff to be seen by an outside ophthalmologist was approved. (Dft's MSJ, Medical Record pp. 75-76). On August 24, 2010, Defendant Talbot noted in Plaintiff's medical chart that he contacted the outside ophthalmologist at the Gailey Eye Clinic to discuss the request for an evaluation of Plaintiff's glaucoma and need for contact lenses vis-à-vis eyeglasses. (Dft's MSJ, Medical Record p. 78). On September 20, 2010, Dr. Montwill examined Plaintiff, re-ordered contact lens solution for 180 days, re-ordered Xalatan for 180 days, and ordered artificial tears for 180 days. (Dft's MSJ, Medical Record pp. 142, 209). On September 29, 2010, Defendant Talbot requested that Plaintiff be sent on a medical furlough to the Gailey Eye Clinic. (Dft's MSJ, Medical Record p. 263). That day, the outside ophthalmologist at the Gailey Eye Clinic, Dr. Aprahamian, recommended the continued use of Xalatan for both eyes, noted that Plaintiff would need an appointment with Dr. David Imes at the Gailey Eye Clinic for a refraction and contact lens[2] prescription, and recommended a four-month follow up on his glaucoma condition. (Dft's MSJ, Medical Record p. 118). Defendant Talbot approved the recommendations on September 30, 2010. (Dft's MSJ, Medical Record p. 118).

On February 17, 2011, Defendant Talbot saw Plaintiff for his glaucoma condition and noted Plaintiff's glaucoma condition was good per the last report by Dr. Montwill and Dr. Aprahamian in September 2009, prescribed more Xalatan for it, noted that rewetting drops for

---

[2] After Plaintiff took issue with Defendant Talbot's reference to "eyeglass lenses" in the latter's Undisputed Material Fact (UMF) #22, Defendant Talbot replied that the reference to "eyeglass lenses" in UMF #22 was a typographical error and should have referenced "contact lenses." *See* Dft's Reply at p. 10. The Court finds Defendant's representation that UMF #22 contains a typographical to be truthful and therefore will not consider Plaintiff's arguments to the extent they are made in response to that typographical error rather than the correct reference to "contact lenses."

Plaintiff's lenses had already been ordered, and asked that Plaintiff be scheduled for a follow-up appointment with Dr. Montwill. (Dft's MSJ, Medical Record pp. 81, 210). On April 12, 2011, Defendant Talbot prescribed Plaintiff a multi-purpose disinfecting solution for his contact lenses and instructed Plaintiff to use them as directed. (Dft's MSJ, Medical Record p. 211). New contact lenses were ordered for Plaintiff on July 26, 2011, by optometrist Peter Kehoe, O.D., and the contacts were re-fitted and then a second set were ordered on September 2, 2011. (Dft's MSJ, Talbot Aff. Exh. A). On August 24, 2011, Defendant Talbot prescribed rewetting drops for Plaintiff for six months. (Dft's MSJ, Medical Record p. 212). On September 19, 2011, Defendant Talbot authorized a medical furlough for Plaintiff to return to the Gailey Eye Clinic where he subsequently underwent an examination and visual field examination of both eyes on September 20, 2011. (Dft's MSJ, Medical Record pp. 273, 120-21). On December 12, 2011, Defendant Talbot examined Plaintiff's glaucoma condition and determined that it was good. (Dft's MSJ, Medical Record pp. 90-92).

Throughout the entire time that Plaintiff has been at Danville Correctional Center he has been on Xalatan for his glaucoma and it has kept his glaucoma stable and controlled. (Dft's MSJ UMF #34, 35). Further, until the time that Plaintiff received a new set of contact lenses in July 2011, while he was using his original pair of lenses, he was provided with Opti-Free Express cleaning solution. (Dft's MSJ UMF #37).

## ANALYSIS

Defendant Talbot argues that Plaintiff cannot prove a genuine issue of material fact exists as to whether Defendant Talbot acted with a sufficiently culpable state of mind. Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*,

429 U.S. 97, 104 (1976). The injury or need must be objectively serious, and the official must personally know of the risk and consciously disregard it. *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999); *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). An objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (quoting *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997))).

Defendant Talbot concedes that Plaintiff's glaucoma and vision difficulty could constitute a serious medical need, but specifically argues that he did not engage in intentional mistreatment of Plaintiff or that he was trying to prolong Plaintiff's pain and suffering. He emphasizes that he regularly refilled Plaintiff's Xalatan prescription to control Plaintiff's glaucoma, and that Plaintiff acknowledges that he has been on that medication ever since he has been at Danville, that he took it as prescribed, and that the medication has been able to keep his glaucoma stable and controlled.

Defendant Talbot also argues that while Plaintiff was originally prescribed soft contact lenses, the denial of those lenses was not made by Defendant Talbot, but was instead made by the Regional Medical Director, Arthur D. Funk, M.D. Defendant Talbot points out that in light of Dr. Funk's denial, Defendant Talbot requested the following: that Plaintiff receive an evaluation for eyeglasses as soon as possible; and that a collegial review be convened which resulted in a decision to refer Plaintiff to an outside ophthalmologist to evaluate his glaucoma and to determine the risk/benefit issues of chronic contact lens use vis-à-vis eyeglasses as it pertained to the condition of glaucoma. Defendant Talbot also points out that thereafter Plaintiff

was seen by in-house optometrist Dr. Montwill, that Plaintiff saw outside ophthalmologist Dr. Aprahamian whose prescription for Plaintiff's contact lenses was approved by Defendant Talbot, and that another optometrist, Dr. Kehoe, also ordered Plaintiff contacts. Defendant Talbot states that Plaintiff was never without contact lenses, wetting solution, or his prescription for his glaucoma, that Dr. Talbot provided Plaintiff with access to individuals specialized in providing treatment for glaucoma and myopic degeneration, and that he approved their recommendations in every instance.

Defendant Talbot also argues that he is entitled to qualified immunity because at the time of the events alleged, the courts recognized that a medical decision to conduct one test or prescribe one treatment instead of another is not deliberate indifference.

Plaintiff, in response, argues that when he was taken to the Gailey Eye Clinic upon his arrival at Danville Correctional Center, the Clinic determined that he was required to have new contact lenses fitted for him annually. Plaintiff argues that Defendant Talbot overruled the eye specialists and determined that eyeglasses would be medically sufficient to treat and control Plaintiff's myopic degeneration. Plaintiff says that the real question is whether Defendant Talbot's decision to overrule the eye specialists' diagnosis and treatment program was in the best interest of Plaintiff. Plaintiff says Defendant Talbot overruled the eye specialists' recommendations based upon the arbitrary financial needs of his employer. Plaintiff says that myopic degeneration is a disease that requires constant medical monitoring and treatment and it will not go away by simply giving the patient eyeglasses. Plaintiff argues that Defendant Talbot is attempting to shift the responsibility for the denial of his contact lenses to Dr. Funk. In his Reply, Defendant Talbot contends that Plaintiff has made assumptions which he argues as fact without citations to the record in support of those assumptions of fact.

In his Sur-Reply, Plaintiff again argues that Defendant Talbot interfered with the eye specialists' prescribed order by denying him new contact lenses every year. He argues that the medical records and his Affidavit attached to his Response show that Defendant Talbot was deliberately indifferent to his serious need of treatment for myopic degeneration and glaucoma. He again argues that the notes and statements of eye specialists recommending new contact lenses over a period of three years establish Defendant Talbot's deliberate indifference.

As for that part of Plaintiff's claim alleging that Defendant Talbot failed to monitor his glaucoma condition, Plaintiff has failed to address that portion of his claim, let alone present evidence to present a genuine dispute on that portion. In fact, Plaintiff takes a rather myopic view (to use a fitting phrase) of the facts and allegations in this case. He focuses upon the alleged denial by Defendant Talbot of the request for new contact lenses for Plaintiff and entirely fails to address the facts of Defendant Talbot's alternative approaches to Plaintiff's eye care in the form of renewed prescriptions for contact lens cleaning solution, Xalatan drops, and requests for outside ophthalmological examinations and input. Prison is a place where medical needs and safety needs must be coupled with administrative procedures and requirements in order to ensure the proper functioning of the prison as well as the health and safety of its inmates. That some requests and approvals happen without prompt action being taken, such as was the case here with Plaintiff not getting his new contact lenses immediately, is unfortunate. However, the lack of prompt action does not necessarily make the individual who was involved in the request and approval process at fault on a constitutional level under Section 1983. Indeed, as the case law cited herein makes very clear, a plaintiff must show that the individual whom he seeks to hold liable for deliberate indifference to his medical needs was more than grossly negligent and acted with a sufficiently culpable state of mind. *See Henderson,* 196 F.3d at 845; *Mathis,* 120 F.3d at

9

91; *Wynn*, 251 F.3d at 593; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).  Plaintiff has not presented evidence sufficient to create a genuine issue of material fact on the question of whether Defendant Talbot was deliberately indifferent to Plaintiff's serious medical needs of glaucoma and myopic degeneration.

Here, Defendant Talbot states in his affidavit and a document in Plaintiff's medical record indicates that it was Dr. Funk who ultimately denied Plaintiff's request for new contact lenses.  In his deposition, however, Plaintiff testified that Dr. Montwill informed him that Defendant Talbot was the person who denied Plaintiff's request for new contact lenses and another document in Plaintiff's medical record indicates that he complained that Defendant Talbot had been the one to deny his request.  If Defendant Talbot had relied only upon his arguments and evidence in the record that it was Dr. Funk and not him who denied Plaintiff's request for new contacts as a way to prevail on his motion for summary judgment, the incompatible stories about who denied Plaintiff's request for contact lenses would be enough to create an issue of material fact requiring a trial.  *See Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) (explaining that the plaintiff's version of her manager's words and actions based upon her own personal encounters with the manager could be used to create issues of material fact).  However, Defendant Talbot has presented considerably more evidence in support of his Motion that has gone unrebutted by the limited evidence presented by Plaintiff.

What Defendant Talbot's additional evidence does show is that he took an alternative course of action in light of his understanding that contact lenses would not be permitted for Plaintiff, and even then he approved others' later recommendations that Plaintiff be provided new contact lenses.  While Plaintiff argues that the delay in him actually obtaining new contacts was due to Defendant Talbot and thus shows Defendant Talbot's culpability, Plaintiff presents

nothing more than his own belief that Defendant Talbot was the person responsible to ensure that Plaintiff actually then received the prescribed new contact lenses.  Additionally, Plaintiff does not present evidence to contradict the evidence in the record that throughout the time he was waiting for new contacts, he was provided with contact lens solution, rewetting drops, and was examined by doctors on many occasions.  Plaintiff repeatedly directs the Court's attention to his medical records generally in arguing that those records show Defendant Talbot's deliberate indifference.  Significantly, those medical records show that Plaintiff's glaucoma was being monitored, that he was prescribed contact lens cleaning solution, that he was sent outside for ophthalmological examinations, and that Defendant Talbot approved the recommendations made by those Plaintiff refers to as the "eye specialists."  Plaintiff agreed during his deposition that prior to receiving replacement contacts in September 2011, he had been prescribed Opti-Free solution for his old set of contacts, had been cleaning his old contacts, and had been applying rewetting solution to the old contacts as well.  (Dft's MSJ, Plf's Dep. p. 89).   The medical records do not show Defendant Talbot overruled the eye specialists' recommendations at any point, as Plaintiff alleges.

Simply, Plaintiff has not presented evidence to contradict the evidence in the record that Defendant Talbot continued to prescribe Plaintiff his Xalatan drops, Opti-Free Express contact lens solution, did not interfere with Plaintiff's in-house examinations by optometrists, and on more than one occasion requested that Plaintiff be sent for examination by outside eye doctors throughout the time Plaintiff went without brand new contact lenses.

Defendant Talbot accurately cites to case law in his Motion for Summary Judgment that provides that the Eighth Amendment is not a vehicle for bringing claims of medical malpractice. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).   Inadequate medical treatment due to

11

negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley*, 823 F.2d at 1072. "Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the Amendment's purview." *Snipes*, 95 F.3d at 591 (quoting *Estelle*, 429 at 107). Furthermore, the medical care Plaintiff received "may not have been entirely to his satisfaction, but the Constitution does not guarantee a prisoner's choice of a physician, a mode of treatment, or a place of treatment, nor does it (or could it) guarantee a particular outcome or level of comfort in the face of physical maladies." *Gerald v. Ind. Dep't of Corr.*, 2009 WL 1795178, at *3 (S.D. Ind. June 23, 2009) (citations omitted). It is also not the courts' practice to pass judgment upon whether the treatment decision made was the correct one. *See Estelle*, 429 U.S. at 107-08 (deciding that the lower appellate court erred in holding that the alleged insufficiency of medical treatment required reversal and remand); *Pinon v. Wisconsin*, 368 F. Supp. 608, 610 (E.D. Wis. 1973) (noting courts' general refusal to second-guess professional judgment of physicians who actually treat inmates)*; see also Maize v. Normand*, 2013 WL 1288046, at *3 (E.D. La. March 11, 2013) ("[M]atters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges."); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (noting that the courts are not to engage in every case in the process of second-guessing the adequacy of medical care that the state provides).

Plaintiff's Response is rife with both speculation and legal conclusions unsupported by evidence in the record. And while Plaintiff cites to his Affidavit in an effort to defeat Defendant Talbot's Motion for Summary Judgment, portions of his Affidavit attached to his Response only go so far as to state the conclusions that Defendant Talbot's version of the materials facts contain discrepancies. *See, e.g.*, Plf's Response, Aff. ¶¶ 3, 3f. ("Dr. Paul Talbot's statement of material

12

facts, as they are contained within his motion for Summary Judgment now before the court, is filled with discrepancies, misrepresentations and ommissions [sic] too numerous to mention under Affidavit."). Thus, much of Plaintiff's Affidavit does not comply with the requirement that an affidavit set forth such facts as would be admissible in evidence. Fed. R. Civ. P. 56(c)(4). Notably, Plaintiff managed to address nearly all of Defendant's replies to Plaintiff's statement of additional material facts in his Sur-Reply, but he did not address Defendant Talbot's reply to the allegation that it was Dr. Talbot, and not Dr. Funk, who denied the request for Plaintiff to receive new contacts in March 2010. In that reply, Defendant Talbot explained that the medical record on which Plaintiff relies showed that the in-house optometrist, Dr. Montwill, made a notation of Plaintiff's own complaint, and not Dr. Montwill's statement, that Dr. Talbot had denied his contact lenses.

Had the evidence presented by the parties revealed only that there was a dispute of fact as to who it was that denied the request for Plaintiff to receive new contact lenses, the outcome here would be different. As discussed above, the evidence presented was not so limited. After viewing the evidence in the light most favorable to Plaintiff, the Court finds that no genuine issue of material fact remains to defeat summary judgment, and so Defendant Talbot's Motion for Summary Judgment is granted [d/e 43]. Even assuming Defendant Talbot did deny the request for new contacts for Plaintiff in March 2010, the undisputed evidence reveals that Defendant Talbot inquired into and pursued other options to treat Plaintiff's glaucoma and myopic degeneration, and did continue to treat Plaintiff for his conditions immediately thereafter. Finally, given the Court's finding that there is no genuine issue of material fact to warrant a trial, the Court does not reach the issue of qualified immunity.

**IT IS THEREFORE ORDERED:**

**1) Defendant Dr. Talbot's Motion for Summary Judgment is GRANTED [d/e 43]. The Clerk of the Court is directed to enter judgment in favor of Defendant Dr. Talbot and against Plaintiff.  This case is terminated, with the parties to bear their own costs.**

**2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal** *in forma pauperis* **should identify the issues Plaintiff will present on appeal.  *See* Fed. R. App. P. 24(a)(1)(c).  If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED this 23rd day of May, 2013.

s/ David G. Bernthal
_____
DAVID G. BERNTHAL
UNITED STATES MAGISTRATE JUDGE